THOMAS K. HILLS ET AL. v. HELEN HART ET AL.,
APPEAL FROM PROBATE, ESTATE, HORACE W. HILLS

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 84771

Memorandum filed November 16, 1949.

*Charles M. Lyman,* of New Haven, for the Plaintiffs.

*Day, Berry and Howard,* of Hartford, for the Defendants.

INGLIS, J.  This is an appeal from an order of distribution of a portion of the estate of Horace W. Hills, entered by the Probate Court for the district of Hartford.  The facts are fully stated in the reasons of appeal, all of which have been admitted.  The portion of the estate involved is that share of the residuum of the estate which was bequeathed in trust for life to Grace Hill Barton under the terms of the third item of paragraph fifth of the will.  The Probate Court ordered that distribution be made to Helen Hart, a grandniece of the testator.  The question whether that is a proper distribution turns upon the interpretation of said item and of paragraph eighth of the will.

The testator had two sisters and one brother, the latter named Charles I. Hills.  Paragraph fifth of the will disposes of the residue of the estate, and the item in question, disposing of one-third of that residue, is the item which benefits that branch of the family headed by said Charles I. Hills.  Charles had five children, Sarah W. Hills, Alice H. Hart, Grace Hills Barton, Charles I. Hills, Jr., and Nellie W. Hills.  By the item in question one-fifth of the third was bequeathed to Alice, one-fifth to each of three trusts for the lives of Sarah, Grace and Nellie and upon their deaths to their children respectively absolutely, and the remaining fifth to a trust (apparently a spendthrift trust) for the life of Charles and upon his death to his children.  These five nieces and nephews of the testator have died in the following order: Sarah in 1907, leaving no issue; Charles in 1915, leaving children named Thomas K. and Charles I., III, the appellants in this action; Alice in 1925, leaving two daughters, Helen, who is still alive, and Elizabeth, who died after 1943 but before 1948; Nellie in 1943, leaving no issue; and now Grace on March 26, 1948, leaving no issue.  As stated above, the present question is as to what is now to be done with the share which at her death was being held in trust for Grace.

The portion of the item of the will which applies to the present situation is subparagraph (d) thereof.  That subparagraph reads as follows:

"(d) In case said Alice Hart shall die before my own decease leaving children, then I give and devise to her said children that portion of my estate which their mother would have received had she survived me.

"In case any of the other of my said nephew or nieces, to wit, Grace, Charles, Nellie and Sarah, shall die either before or after my decease leaving no issue, then and in either of said events, the portion of my estate which is given for the benefit of such nephew or niece, if they have survived, shall be divided among the said Alice Hart, if living-or her children, if dead-and the Connecticut Trust and Safe Deposit Company as follows: the said Alice shall receive one part, and if she is dead-her children, one part, and the Connecticut Trust & Safe Deposit Company as many parts as there are then surviving in number of the said Grace, Charles, Nellie and Sarah, to be taken by the said Alice, to be to her and her heirs forever, and by said Connecticut Trust & Safe Deposit Company, as trustee for the respective parties then surviving upon the same trusts as mentioned herein with reference to the other trust estates given for the benefit of the same person or persons."

Under this provision of the will it is perfectly plain that, in order to participate in the division of any of the shares of the estate which were held in trust upon the death of a life tenant, either Grace, Charles, Nellie or Sarah must survive that life tenant. Also it is apparent that none of the trusts set up for any of them would participate unless that one survived. The shares held for each one of them would go to his or her children but the share held for any one of them if he died without children would not be added to the trust held for any other or that other's children, unless that other survived.

The item as a whole does not put Grace, Charles, Nellie and Sarah on an equality with Alice. Alice, if she survives the testator, is given an absolute estate in fee, whereas Grace, Charles and Nellie are given life estates, and Charles is made the beneficiary for life of a spendthrift trust. There is nothing therefore to indicate that the testator's scheme of disposition involved a deseire for absolute equality as among either his nieces and nephew or their respective children. Even though he had an intention of equality, the provision of his will just quoted is unambiguous and therefore calls for no reference to his general scheme. It provides clearly that, upon the death of

either Grace, Charles, Nellie or Sarah without issue, the share held for him or her shall be divided into only as many parts as there are others of those life tenants then living, plus one other share for Alice or her children, and that only Alice and so many of the others as are then alive shall receive a share.

Accordingly, taking the quoted paragraph of the will by itself, there can be no question but that it requires the distribution of Grace's share upon her death to the surviving child of the testator's niece Alice, as ordered by the Probate Court.

The appellants, however, claim that the provisions of paragraph eighth alter the situation. That paragraph, so far as it has any direct bearing on this case, reads as follows:

"Eighth: In case any person to whom I have in any contingency in and by this will, given or devised any absolute estate shall die before the happening of such contingency, leaving a child or children, then upon the happening of such contingency I give and devise to such children equally the same estate as their parent would have received had such parent survived. . . ."

It is to be noted that here the testator is making provision for the disposition of the property in which he has bequeathed an "absolute estate" to some beneficiary on a contingency in the event of the death of that beneficiary before the happening of the contingency. By absolute estate he clearly means an estate in fee, for instance, a remainder after a life estate which is not to become vested until after the life estate because it is contingent upon the survival of the beneficiary.

The gist of the appellants' claim is that they by virtue of this provision step into the shoes of their father Charles and, in that way, become entitled to one-half of the share which has been held in trust for their aunt, Grace. The answer to that contention is twofold. First, their father does not come within the description of one who has been "given or devised any absolute estate" upon a contingency. The most that he received was a life estate in one-fifth share of one-third of the estate, and this without any contingency, and the possibility of sharing pro rata for his life in the share of one of his sisters, Grace, Nellie or Sarah, on the contingency that that one died without issue and he survived. He would never take an absolute estate under any provision of the will. Second, the provision of the clause of the will now under examination is that such children

shall take only "the same estate as their parent would have received had such parent survived." If the appellants' father had survived his sister Grace all that he would have taken from her share would have been at most a life enjoyment of it under the terms of the trust set up for him. His life terminated in 1915, so even though this clause did operate to give his sons the same estate that he would have taken if he had survived Grace, what they would get would be an empty shell. It is clear therefore that the provisions of the eighth paragraph of the will do not apply to affect the present situation. They do not give the appellants any right to participate in the distribution of the share of the estate formerly held in trust for Grace Hills Barton.

The appellants argue that it could hardly have been the intention of the testator to make their participation in the distribution of Grace's share of the estate upon her death depend upon whether Grace survived their father by one day or he survived her by one day. The answer to that is obvious. We are concerned not with what the actual intention of the testator was but what was the intention he expressed. It may be that the testator would have liked to avoid such an anomaly as the appellants here point out, but the fact is that the unambiguous language of his will does not avoid it, and the court should not make a will for him.

The appellants further make an argument based upon the fact that the sentence following the sentence above quoted from paragraph eighth makes no reference to any "absolute estate," but refers to "a contingency at which such person would receive any interest in my estate." This sentence has to do with what shall happen in the event that a beneficiary shall die without children. It begins, "But in case any such person." The word "such" clearly refers to the description of persons as contained in the preceding sentence, and that description is of any person "to whom I have . . . given or devised any absolute estate." The fact, therefore, that in the second sentence the testator does not expressly state that he is referring to persons who have been given an absolute estate lends no color to the claim that in using the term "absolute estate" in the first sentence he did not mean an estate in fee but really meant any kind of an interest.

Upon the whole it is concluded that under the terms of the will that share of the testator's estate formerly held in trust

for Grace Hills Barton should now be distributed to Helen Hart as ordered by the Probate Court.

Judgment may enter denying the appeal and ordering a distribution to Helen Hart and that the appellees recover their taxable costs.